UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICHARD CLARK,** | : | Case No. C-1-01-846 |
| | : | |
| Plaintiff, | : | **Judge Spiegel** |
| | : | |
| vs. | : | |
| | : | **PLAINTIFF'S MOTION** |
| **HAMILTON COUNTY, et al.,** | : | **PURSUANT TO CIVIL RULE 56(f)** |
| | : | **FOR CONTINUANCE TO PERMIT** |
| Defendants. | : | **COMPLETION OF DISCOVERY** |
| | : | |
| | : | **AND** |
| | : | |
| | : | **PLAINTIFF'S MEMORANDUM IN** |
| | : | **OPPOSITION TO MOTION FOR** |
| | : | **SUMMARY JUDGMENT FILED** |
| | : | **BY DEFENDANTS** |
| | : | **CORRECTIONAL MEDICAL** |
| | : | **SERVICES AND HELEN KOHN** |
| | : | |
| | : | |

## INTRODUCTION

This civil rights case seeks damages for serious physical injuries plaintiff Richard Clark ("Clark") sustained when the defendants failed to protect him from being assaulted by another inmate, John Harris ("Harris"). There was a substantial risk of harm to Clark. Harris was a violent and mentally ill inmate with a history of assaultive behavior. Defendant Helen Kohn ("Kohn") ignored the risk of harm to Clark and failed to take reasonable action to protect him. Defendant Correctional Medical Services ("CMS") is liable pursuant to respondeat superior as well the corporation's failure to enact policies sufficient to protect plaintiff Clark. Plaintiff Clark brought this civil rights claim based upon the defendants' violation of his right under the Eight Amendment to be free from cruel and unusual punishment.

Defendants Kohn and CMS (collectively "defendants") have filed a Motion for Summary Judgment over one month before the expiration of the discovery deadline. (Doc. 15). Plaintiff is requesting a continuance pursuant to Rule 56(f) seeking additional time to complete discovery prior to responding to defendants' motion. Plaintiff has also submitted a memorandum in opposition to defendants' motion based upon information known at this time. This memorandum is submitted in the event the Court finds plaintiff's Rule 56(f) motion not well taken or in the event that the court finds the record before it sufficient to deny defendants' motion at this time.

**PLAINTIFF'S MOTION PURSUANT TO CIVIL RULE 56(f)
FOR CONTINUANCE TO PERMIT COMPLETION OF DISCOVERY**

Plaintiff requests an opportunity pursuant to Federal Rule 56(f) to complete discovery prior to responding to the Motion for Summary Judgment filed by defendants Kohn and CMS. Plaintiff's request to complete discovery is properly raised by this motion. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). The discovery deadline in this matter is set for November 1, 2003. That deadline was set by the Court's preliminary pretrial order and had not been extended by the parties. (Doc. 13). The dispositive motion deadline of December 1, 2003 was also set by that order. (Doc. 13).

Defendants Kohn and CMS have filed a motion for summary judgment. Further discovery is necessary to permit plaintiff Clark to fully respond to defendants' motion. Specifically, plaintiff Clark needs to take the deposition of defendant Kohn as well as to complete paper discovery. Defendants' Motion for Summary Judgment argues that defendants had no notice that Harris presented a risk of physical harm to plaintiff Clark. (Doc. 15 at p.4). What defendants knew and when they knew is a contested issue of material fact in this case. It is therefore necessary to take defendant Dr. Kohn's and other depositions in order fully prepare the matter for consideration on summary judgment.

2

Plaintiff Clark respectfully requests that the court grant him until December 1, 2003 to file his memorandum in opposition to defendants' motion for summary judgment. That will provide plaintiff sufficient time to secure a transcript of all depositions.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS CMS AND KOHN**

In the alternative, this court should deny the motion for summary judgment as there are genuine issues of material fact in dispute regarding the responsibility of Dr. Kohn and CMS for the assault by inmate Harris on the plaintiff.

**I.    FACTS**

Defendant CMS is a corporation which contracts with Hamilton County to provide medical and psychological services to inmates at the Hamilton County Justice Center ("HCJC") located in Cincinnati, Ohio. (Doc. 15 at p.2). Defendant Kohn was an employee of CMS at all times relevant to this action. She was the psychiatrist responsible for the mental health care of the inmates at HCJC. At all times relevant to this case CMS and defendant Kohn were treating John Harris for a mental illness that made Mr. Harris a danger to himself and others. (Ex. A, Mental Health Assessment)[1]

**A.    CMS and Kohn Had Knowledge of the Risk Posed by Inmate John Harris and Failed to Provide a Reasonable Response**

John Harris entered the Hamilton County Justice Center on October 12, 1999 and was classified for placement in the institution. (Ex. B-1 to B-2, Inmate Classification Form). The classification instrument noted that he had just spent the night on a psychological ward and that he was to be housed in the psychological unit. The disposition form notes that Harris is to be

---

[1] Plaintiff does not wish to unduly expose the medical records of Mr. Harris on the public record of this court. These records have therefore been filed under seal contemporaneous with this memorandum.
[3] Hamilton County operates the Queensgate Correctional Facility as well as the Hamilton County Justice Center.

housed "PSYCH only (overflow to GP - HCJC only (no QCF³))." (Ex. C, Disposition of Inmate). Defendant Kohn's initial mental health assessment acknowledges that she was aware that Harris has a history of violent behavior. (Ex. A, Mental Health Assessment). The assessment goes on to outline Harris' history of psychiatric treatment and hospitalizations, his numerous medications, and acknowledges that he is currently hearing voices. A mental status exam prepared that same date notes that Harris has, "poor impulse control" and "overt anger." (Ex. D, Mental Status Exam). Harris again acknowledges that in the midst of these violent ideations he is hearing voices and having blackouts. (Ex. D, Mental Status Exam). Harris is housed in the psychiatric unit.

Dr. Kohn again reviewed Harris two days later on October 14, 2003. The progress notes indicated that Harris had been on medication with "SAMI" since July, 1999. Dr. Kohn notes, however, that Harris was being terminated from that program due to "death threats" made toward the staff at that facility. (Ex. F, Progress Note). Harris was released from the psychiatric pod later that day and placed in general population. This housing change would have been ordered by defendant Kohn.

Harris did not fare well in general population and his condition deteriorated further. Harris began sending "kites" to the medical staff. On October 18, 1999 he wrote, "I've not seen the doctor - I really need my medicine. 3000 mg Depicote and 300 mg Trazadone." (Ex. G, Kite of October 12, 1999). He sent another warning sign that same day when he also wrote, "Would like to see the doctor. Haven't been getting med. *Starting to have problems with myself again*." (Ex. H, Kite of October 18, 1999)(emphasis added). Harris' attempts to obtain proper medication continue over the next several days with similar kites complaining that he can not sleep and that his, "mind is racing like crazy." (Ex. I, Kite of October 21, 1999; Ex. J, Kite of

4

October 27, 1999). Defendant Kohn was well aware of Harris' lack of proper medication and signed an order on October 21, 1999 which acknowledged that Harris, "Hasn't taken meds since 7/99." (Ex. K, Physicians' Order).

Other law enforcement and health care officials were aware of Harris' instability. Upon his admission into the Justice Center, a judge of the Hamilton County Municipal Court ordered that an emergency evaluation be performed as to Harris' competence to even stand trial for his crimes. (Ex. L, Journal Entry). On November 8, 1999 an entry was issued by the Municipal Court finding Harris incompetent to stand trail and ordering that he be placed in the Pauline Warfield Lewis Center for psychiatric treatment. (Ex. M, Entry Finding Defendant Incompetent). But Harris was never transferred from general population at the HCJC.

The corrections officers on Harris' pod kept defendants Kohn and CMS aware of Harris' psychological instability. A progress note entered on November 16, 1999 indicated that an officer called psych from Harris' pod and questioned why Harris was not simply housed in psych since he was down there everyday. (Ex. N, Progress Note). The response tellingly responded that Harris had apparently received no psychological treatment for "a few weeks." (Ex. N, Progress Note). The note went on to confirm the Harris was still showing "poor impulse control" and was continuing his requests for proper medication. (Ex. N, Progress Note). The CMS response was that Harris was not to be sent to psych unless he was actively causing "a problem on the pod." The resulting order was to "maintain present housing" and "discuss w/ psychiatrist." (Ex. N, Progress Note).

The matter was clearly discussed with defendant Kohn who signed off on the counselor's order on November 18, 1999 - just over two weeks prior to Harris' assault on plaintiff Clark. (Ex. N, Progress Note). The defense has argued that plaintiff is unable to prove that Harris was a

5

danger to the inmates in general population. Defendant Kohn's written notes of November 18, 1999 clarify exactly how much she knew. With an almost eerie foreboding, defendant Kohn notes that Harris had told her he, "Fears he'll go off." (Ex. N, Progress Note). Defendant Kohn's response to the obvious risk is to sign off on the order which returned Harris to general population and provided him the opportunity to "go off" on Clark and viciously assault him.

Harris continued to waive warning flags in front of defendant Kohn for the next two weeks leading to his assault on plaintiff Clark. Harris continues to kite to psych requesting proper medication and advising them he still could not sleep and that his nerves were "shot." (Ex. O, Kite of November 23, 1999; Ex. P, Kite of November 30, 1999). Harris kited to psych about not receiving his medication as close to the incident as December 2, 1999. (Ex. Q, Kite of December 2, 1999). Harris assaulted plaintiff Clark on December 6, 1999 while he still remained in general population.

B.    **Assualt by Harris on Clark**

Plaintiff Clark was admitted into HCJC on April 5, 1999. He had been arrested for mailing a quarter pound of marijuana oil to a grade school friend who lived in Cincinnati. (Clark depo at p.11). Harris was housed in general population with Clark even though Harris was classified as a psychiatric patient. (Clark depo at p.18). Plaintiff Clark described Harris as a daily problem on the pod. (Clark depo at p.14). Harris had "faraway eyes, eyes not even seeing." (Clark depo at p.17). He was physically abuse to inmates smaller than himself and would push them down to the floor. (Clark depo at p.18-19). Harris attempted to control the pod went so far as to control the newspaper which he himself was unable to read. (Clark depo. at p.15). Harris was being seen routinely by the psych department during this time. (Clark depo at p.18). Plaintiff Clark recalls him changing his medications routinely. (Clark depo at p.18).

An altercation occurred between plaintiff Clark and Harris in late November, 1999. Plaintiff Clark had gotten a section of the newspaper from Harris. (Clark depo at p.19-20). Harris for some reason told plaintiff Clark not to the crossword puzzle. Plaintiff Clark took the paper to his cell. (Clark depo at p.20). Shortly thereafter, Harris enters plaintiff Clark's cell and accused him of doing the crossword. (Clark depo at p.20). Harris took the paper from plaintiff Clark and struck him in the face with his open hand. (Clark depo at p.20). Plaintiff Clark described "seeing stars" and hearing an immediate ringing in his ears. (Clark depo at p.21). Plaintiff Clark reported the incident to officer on duty. (Clark depo at p. 21-22). Both Harris and plaintiff Clark were locked in their cells for two hours. (Clark depo at p.21-22). The incident was over as far as plaintiff Clark was concerned.

The incident which is the heart of this lawsuit occurred a few weeks later on December 6, 1999. Plaintiff Clark had been to court that day and was returning to the pod. (Clark depo at p. 24). Upon his return, plaintiff Clark found a Sunday edition of the Cincinnati Enquirer in the pod. (Clark depo at p.25). Plaintiff Clark was interested in doing the crossword and began looking through the paper. Harris approached plaintiff Clark and told him that he could not have the paper. (Clark depo at p.26). Plaintiff Clark advised Harris that the paper was for everyone and took it back to his cell. (Clark depo at p.26).

Harris entered plaintiff Clark's cell a short time later and without a word punched plaintiff Clark in his left eye. (Clark depo at p. 26-27). Plaintiff Clark first thought Harris had something in his had and described the blow, "It was like a brick hit me." (Clark depo at p. 26-27). Harris then hit plaintiff Clark a second time before running back to his cell and closing the door. (Clark depo at p.27). Plaintiff Clark was taken to the infirmary and ultimately to the Emergency Room at the University Hospital where x-rays were taken. (Clark depo at p.27-28).

The bone surrounding plaintiff Clark's eye was broken in three places. (Clark depo at p.28). He also had damage to his nose, ear, and jaw. Plaintiff Clark testified to ongoing difficulty with his breathing, his vision, and loss of sensation in his jaw. (Clark depo at p.29). Plaintiff Clark ultimately had to have a plate surgically implanted in his face to repair the damage done by Harris. (Clark depo p. 31).

## II.     ARGUMENT

### A.     Summary of Arguments

Defendants' motion for summary judgment states that, "Plaintiff does not meet the subjective test used to determine if a prison official is liable under 42 U.S.C. § 1983 for violations of the Eight and Fourteenth Amendments to the U.S. Constitution." (Doc. 15 at 6). More specifically, defendants' motion asserts that, "Plaintiff does not provide Defendants with the requisite notice for a claim pursuant to 42 U.S.C. § 1983." (Doc. 15 at 4).

The record before this court indicates that defendant Kohn was aware of the substantial risk of serious harm that Harris posed to Clark and that she failed to take reasonable steps to guarantee Clark's safety. Defendant CMS is liable pursuant to respondeat superior as well the corporation's failure to enact policies sufficient to protect plaintiff Clark.

### B.     Applicable Standard of Review

The party moving for summary judgment has the burden of showing conclusively that no genuine issue of material fact exists and the evidence together with all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion. *Baker v. Roberts Ex., Inc.*, 800 F. Supp. 1571 (S.D. Ohio 1992). The moving party's summary judgment papers are to be closely scrutinized while those of the non-movant are to be read indulgently. *United States v 311 Cleveland Ave. Hamilton Co.*, 799 F. Supp 824 (S.D. Ohio 1992). The court

must accept plaintiff's factual allegations as true and accept reasonable inferences most favorable to plaintiff. *Jones v. Johnson*, 827 F.2d 1103 (6th Cir. 1987).

The narrow question that must be decided on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the movant to establish conclusively that no genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992); *Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979), *cert. denied*, 444 U.S. 986 (1979). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252-53 (1986). The inquiry is whether the evidence presents a "sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 2083. Summary judgment is specifically inappropriate in prisoner civil rights litigation where deliberate indifference is at issue. The Sixth Circuit has held that, "summary judgment is inappropriate when there are issues of fact as to whether a defendant in a § 1983/Eight Amendment case was aware of facts from which the inference could be drawn that a substantial risk of harm exited and whether he actually drew the inference." *Woods v. Lecureux*, 110 F.3d 1215, 1224 (6th Cir. 1997) (internal quotations and citations omitted, quoting in part from *Street v. Corrections Corp. of America*, 102 F.3d 810 (6th Cir. 1996)). Similarly, in *Grimm v. Lane*, 895 F. Supp. 907 (S.D. Ohio 1995), the court held that a swearing match over what the guards knew about the plaintiff's safety in a deliberate indifferent case was "properly left for the jury to decide." *Id*. at 911.

C.  **Plaintiffs' Claims Are Not Subject to the Administrative Exhaustion Requirement of the Prison Litigation Reform Act (42 U.S.C. § 1997e)**

The captions contained within Defendants' motion seem to make clear that their arguments are aimed at whether plaintiff Clark met the subjective knowledge requirement for a § 1983 failure to protect claim. (Doc. 15 at p.6). Other portions of the brief however discuss whether plaintiff utilized the jail's "grievance procedure" and whether plaintiff provided defendants with the requisite "notice" necessary for a claim. (Doc. 15 at 3-4). Defendants' motion could arguably be attempting to raise the defense that plaintiff failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). Plaintiff Clark responds to that argument in an abundance of caution.

The PLRA requires that any prisoner plaintiff must exhaust all available administrative remedies prior to bringing suit. The language of the statute reads:

> (a) Applicability of Administrative Remedies
>
> No action shall be brought with respect to any prison conditions under § 1983 of this title, or any other Federal law be a prisoner confined, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A natural reading of the statute suggests that its application begin with questioning whether the plaintiff is "a prisoner confined in [a] jail prison, or other correctional facility?" *Cox v. Mayer*, 352 F.3d 422 (6th Cir. 2003).[4] The Fifth Circuit addressed this issue within the context of an attorney fee provision of the PLRA in the case of *Janes v. Hernandez*, 215 F.3d 541. Janes was injured by another inmate while incarcerated at a county jail. *Id.* at 542. Even though he filed suit following his release, the defendants argued that the PLRA

---

[4] The Court goes on to assume without deciding that "a prisoner who has not exhausted his administrative remedies while in prison may nonetheless sue after being released from prison." *Cox*, 332 F.3d at 427, n. 3.

applied to his case. The Fifth Circuit disagreed and held, "We agree with the Eighth and Seventh Circuits which have held that this Act applies only to those suits filed by prisoners."

Plaintiff Clark is not a "prisoner" as defined by the PLRA because he filed this lawsuit after being released from prison. Plaintiff Clark was released from prison on October 1, 2001. (Ex. R, ODRC Offender Data). The PLRA does not apply to this lawsuit.

### C. Defendant Kohn Was Deliberately Indifferent to the Serious Risk of Harm to Clark

Plaintiff Clark was attacked while an inmate at the Hamilton County Justice Center ("HCJC"). He has sued under § 1983 alleging that the defendants failed to protect him from the inmate who attacked him. To prove his claim, Clark must show that the defendants were deliberately indifferent to his risk of serious harm. For purposes of summary judgment, the court must accept plaintiff's factual allegations as true and accept all reasonable inferences most favorable to plaintiff. *Jones v. Johnson*, 827 F.2d 1103 (6th Cir. 1987). The facts before this court render summary judgment inappropriate and require that this matter be tried to a jury.

A prison official's "deliberate indifference" to an inmate's substantial risk of serious harm is a violation of the Eight Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994). The Supreme Court held that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. The officials also have a duty to take reasonable steps to guarantee the safety of the inmate. *Id*. at 832.

> Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct**, having stripped them of virtually every means of self-protection** and foreclosed their access to outside aid, the **government and its officials are not free to let the state of nature take its course**. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

11

*Id*. at 833 (citations and internal quotations omitted, emphasis added).

Deliberate indifference occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety: the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* at 837. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842; See *also Doe v. Bowles*, 254 F.3d 617 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1223 (6th Cir. 1997); *In re Southern Ohio Correctional Facility*, 166 F.R.D. 391 (S.D.Ohio 1996). In addition, knowledge of risk can be constructive knowledge. *Farmer,* 511 U.S. at 840. A fact finder may conclusively presume awareness from the obviousness of a risk." *Id*. The defendant need not know of the harm to this particular inmate. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 83 (6th Cir. 1995). *See also Street v. Corrections Corp. of America*, 102 F.3d 810, 815, 817 (6th Cir. 1996) (overruling *Marsh v. Arn,* 937 F2d. 1056 (6th Cir. 1991)(defendant need not know of specific risk of harm particular to the plaintiff). The correct inquiry, especially in a case where prison officials are blamed for creating an excessive risk of inmate-on-inmate violence, is whether the official had knowledge about the substantial risk of serious physical harm to a particular class of person, not whether she know who the particular victim turned out to be. *Taylor*, 69 F.3d at 80. Once the officials have knowledge of the risk of harm, they have a duty to take reasonable steps to guarantee the safety of the inmate. *Farmer*, 511 U.S. at 833. Failure to do so violates the Eighth Amendment and gives rise to liability.

Defendants' motion for summary judgment argues that, "Plaintiff does not provide Defendants with the requisite knowledge for a claim pursuant to 42 U.S.C. § 1983." (Doc. 15 at p.4). The question for this court is therefore whether there is sufficient evidence in the record

that when taken in the light most favorable to the plaintiff that could permit a jury to find that defendant Kohn was aware of the substantial risk of serious physical harm posed by Harris. The record in this case is replete with evidence that proves the answer to that question is "Yes." As set out above there are numerous facts indicating that Kohn was well aware of Harris' violent propensities and instability at the HCJC. Rather than retain Harris in the psych unit or comply with the court ordered transfer to him the Lewis Center, these defendants left Harris in the general population unit as a ticking bomb in the midst of all of the other inmates, including plaintiff Clark.

A reasonable jury could easily conclude that defendant Kohn was well aware of the substantial risk of serious physical harm posed by Harris. As plaintiff Clark is entitled to every reasonable inference as this stage of the proceedings, summary judgment is clearly inappropriate on this issue.

> **D.    Defendant CMS is Liable to Plaintiff for the Injuries Suffered by the Attack by Inmate Harris**

Defendants' motion for summary judgment is filed on behalf of defendants CMS and Kohn. (Doc. 15). Defendants' brief fails to explain why CMS is not liable. There are three separate bases for CMS liability. First, the assignment of the mentally ill Harris to general population was consistent with and a product of CMS policies and procedures. Second, Dr. Kohn is a policymaker whose actions bind CMS. Third, as a private corporation acting as a state actor, CMS is liable under the doctrine of respondeat superior.

The policies and practices which governed defendant Kohn and the psych ward she ran were set by the corporate entity CMS. It is obvious from the Harris' medical records reviewed above that under those policies final decision-making authority was granted to defendant Kohn

13

to determine whether dangerous mentally ill inmates would be released to general population. To the extent that the liability of private corporations acting under color of state law track municipal liability principles, the corporation is liable for policy decisions that disregarded an excessive risk to inmate heath or safety. *Pembaur v. Cincinnati*, 475 U.S. 469 (1986). Plaintiff asserts that the policies and procedures set by CMS and finally decided by Kohn permitted a dangerous inmate such as Harris to be housed in general population with Clark. This failure constituted deliberate indifference to Clark's safety. This issue will be factually explored during the conclusion of discovery requested by plaintiff's Rule 56(f) motion above.

But private corporate liability may not merely track municipal liability under §1983. Respondeat superior liability may well apply to bind the corporation. Four members of the United States Supreme Court are prepared to entirely scrap the ban on respondeat superior liability for local governments. *See Board of County Commissioners v. Brown*, 1520 U.S. 397 (1997). These justices have questioned whether the curious refusal to impose vicarious liability is an accurate reading of congressional intent. To the extent that this rule, which is unique to §1983, is designed to protect local governments for policy reasons, the rationale for extending this protection to private, for profit entities such as CMS, evaporates. Note that when faced with a similar opportunity, the Supreme Court refused to extend the qualified immunity defense to prison guards in private facilities. *Richardson v. McKnight*, 521 U.S. 399 (1997). It would be consistent therefore to hold the line at local governments with respect to respondeat superior liability. *See Moore v. Wyoming Medical Center*, 825 F.Supp. 1531 (D. Wyo. 1993); *but see also Street v. Corrections Corporation of America.*, 102 F. 3d 810 (6th Cir. 1996)(pre-*Richardson* and *Brown*, extending ban on respondeat superior liability to private state actor defendants without extensive discussion). The ban on respondeat superior liability as applied to private state

actors is certainly ripe for reexamination and should be overturned in light of more recent precedent.

Defendant CMS is therefore liable under traditional policymaking theories of § 1983 as well as vicariously liable based on the actions of its employee, Dr. Kohn.

### III.     CONCLUSION

Defendants' motion for summary judgment should be denied. In the alternative, plaintiff's motion for a continuance pursuant to Rule 56(f) should be granted and this matter continued to permit discovery to be completed prior to summary judgment being ruled upon.

**Respectfully submitted,**

_s/ Alphonse A. Gerhardstein_____
Alphonse A. Gerhardstein (0032053)
Trial Attorney for Plaintiffs
Paul M. Laufman (0066667)
Attorney for Plaintiffs
1409 Enquirer Building
617 Vine Street
Cincinnati, Ohio 45202
(513) 621-9100
agerhardstein@laufgerhard.com
plaufman@laufgerhard.com

### CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2003, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/ Alphonse A. Gerhardstein_____