**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD CLARK** | :: | **CASE NO. C-1-01-846** |
| **Plaintiff** | :: | **(Judge Spiegel)** |
| vs. | :: | **MOTION FOR SUMMARY JUDGMENT OF COUNTY DEFENDANTS** |
| **HAMILTON COUNTY, et al.** | :: | (Affidavit of Jeffrey Eiser Filed Separately) |
| **Defendants** | :: | |
| | :: | |

Now comes Defendant Simon L. Leis, Jr., Hamilton County Sheriff [hereinafter "Leis"], and Hamilton County, Ohio [hereinafter "County Defendants"], by and through counsel, who pursuant to Federal Civil Rule 56, hereby move this Court for summary judgment. The reasons therefore are set forth in the attached Memorandum and Affidavit with exhibits attached thereto.

           Respectfully submitted,

           MICHAEL K. ALLEN
           PROSECUTING ATTORNEY
           HAMILTON COUNTY, OHIO

           /s/ David T. Stevenson, 0030014

           David T. Stevenson (0030014)
           Trial Attorney
           Susan Marie Gertz (0065319)
           Assistant Prosecuting Attorneys
           Hamilton County, Ohio
           230 E. Ninth Street, Suite 4000
           Cincinnati, Ohio 45202
           DDN: (513) 946-3014 (Stevenson)
           DDN: (513) 946-3027 (Gertz)
           FAX:  (513) 946-3018
           ATTORNEYS FOR COUNTY DEFENDANTS

**MEMORANDUM**

I. **INTRODUCTION AND FACTS.**

   A. **Procedural History and Claims.**

Plaintiff Richard E. Clark filed this action on December 5, 2001, against Hamilton County Sheriff Simon L. Leis, Jr., in both his individual and official capacities, and Hamilton County (hereinafter "County Defendants"), alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983. (Doc. 1). The claims against the Sheriff and the County appear to relate solely to the operation of the jail (Doc. 1, ¶¶ 4,5, 26), the classification and segregation of inmates within the facility (Doc. 1, ¶¶ 23, 24, 25), and the acts or failure to act on the part of defendant John Doe #1. (Doc. 1, ¶ 20). Clark also sued Correctional Medical Services, Inc., Dr. Helen Kahn, Jerry Pettigrew, and several individuals who remain unidentified. (Doc. 1). Clark did not sue John Harris, the inmate who is alleged to have assaulted him.

   B. **Plaintiff Clark as an Inmate of the Hamilton County Justice Center.**

Inmates are housed within the Hamilton County Justice Center (hereafter "HCJC") based upon classification scores received upon admission. They are reclassified on 30-60 day basis. (Eiser Depo., pp. 16-18) At the time of the incident forming the basis of Clark's Complaint, medical and mental health services in HCJC were provided by Correctional Medical Services, Inc. pursuant to a contract with Hamilton County. (Eiser Depo., pp. 34-35). Decisions on which inmates occupied beds in the medical and mental health units were made by employees of Correctional Medical Services, Inc. (Eiser Depo., pp. 35, 41; Eiser Affidavit, exhibit 3). In the event that more inmates

required medical and/or mental health services than there were beds then available, beds were made available in transition units for inmates with these needs. (Eiser Depo., pp. 43-45).

Clark was arrested on a charge of trafficking in marijuana and incarcerated at the HCJC. (Doc. 1). Clark was classified as a maximum security inmate. (Eiser affidavit, ¶ 2 ). His conduct included several reported incidents, including possession of contraband (a lighter) and possession of a weapon (a shank). (Eiser affidavit, Exhibit 7). While at the HCJC, Clark had a problem with Harris, a fellow inmate who he knew and had problems with prior to their respective incarcerations. (Clark Depo., pp. 15-16). According to Clark, Harris is a drug addict who stayed at Clark's residence and was "kicked out" for taking stuff. (Clark Depo., p. 16). Clark alleges that he was struck on the left side of his face by Harris in early November, 1999 (Doc. 1, ¶ 20) and that Harris assaulted him again on December 6, 1999 (Doc. ¶¶ 1, 21), causing him injury. To the extent that it is relevant, at the time of the second incident, Clark was no longer a pre-trial detainee, having pled guilty to several counts of the indictment against him earlier that day. (Entry, Exhibit 1)

Clark was aware that he could talk to the guards regarding problems he was having with other inmates. (Clark Depo., p. 72). Clark did not report either incident occurring with Harris in HCJC through the grievance procedure available to inmates. (Clark Depo., pp. 66-67). While Clark claims to have reported the first incident to an unidentified guard, he specifically claims that this report was not passed up the chain of command. (Doc. 1, ¶ 20). In fact, he does not recall ever filing a written complaint regarding the second assault or the names of any prison officials with whom he verbally discussed the second assault. (Clark Depo., p. 67). Clark did not file a kite or a grievance of any kind with respect to his contact with Harris that occurred prior to his incarceration. (Clark Depo, p. 71). He did not ask to speak to the Sheriff, nor any of the shift supervisors following the second

incident with Harris. (Clark Depo., p. 71). Clark did make a complaint on November 4, 1999, that he was having trouble with his cellmate. (Eiser Affidavit, Exhibit 6). However, Harris was never Clark's cellmate. (Eiser Affidavit).

## II.    STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present *significant probative evidence* which makes it necessary to resolve the parties' differing versions at trial. *60 Ivy Street v. Alexander*, 822 F.2d 1432 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929 (6th Cir. 1989)(emphasis added). Conclusory allegations are not sufficient to oppose a properly supported motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155 (6th Cir. 1990). The United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded...as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

**III.   ARGUMENT**

**A.   Plaintiff's Claim Pursuant to 42 U.S.C. § 1983 Fails As A Matter Of Law Because County Defendants Lacked The Culpable State Of Mind Necessary To Satisfy The Eighth Amendment Deliberate Indifference Standard.**

To assert a Section 1983 claim against the County Defendants, Plaintiff must prove that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person who was acting under color of state law. *Mays v. City of Dayton,* 134 F.3d 809 (6th Cir.), cert. denied, 524 U.S. 942 (1998). In this case, this requires a determination of whether Plaintiff's Eighth Amendment rights were violated as a result of the November and December 6, 1999 assaults.

Prison officials have a duty to protect prisoners from violent acts committed by other prisoners. However, every injury suffered by one prisoner as a result of an act committed by another prisoner does not constitute liability under Section 1983 for prison officials otherwise responsible for prisoner safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In order to qualify as a constitutional violation, the prison official must be found to have had a "sufficiently culpable state of mind". *Id.* This requires a showing that the prison official acted with deliberate indifference to the prisoner's safety. *Id.*

Specifically, deliberate indifference occurs only where the "[prison] official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference is more than negligence or carelessness; it is the "equivalent of recklessly disregarding" a risk of harm. *Howard v. Grinage,* 82 F.3d 1343, 1352 (6th Cir. 1996) (quoting *Farmer*, 114 S. Ct. at 1978). Significantly, this is not an objective standard. It

is not whether a reasonable officer would have been aware of the facts or drawn the inference that an excessive risk existed, it is whether *this* officer actually knew of those facts, and actually made the inference based on those facts. Thus, the "cases mandate inquiry into [the] prison official's state of mind". *Id.*

Here, the evidence fails to satisfy this subjective standard. There is no evidence that Defendant Sheriff Leis, or any corrections officer in his employ, had any knowledge whatsoever of a risk of harm to Clark either before or during either of the assaults in question (late November and December 6, 1999). In its best light, the evidence reveals nothing more than the following: Clark did not file a kite or a grievance of any kind with respect to his contact with Harris that occurred prior to his incarceration. (Clark Depo, p. 71). Clark was aware that he could talk to the guards regarding problems he was having with other inmates (Clark Depo., p. 72), but he did not report either incident occurring with Harris in HCJC through the grievance procedure available to inmates. (Clark Depo., pp. 66-67). Clark claims to have reported the first incident to an unidentified guard, but denies that this report was passed up the chain of command. (Doc. 1, ¶ 20). Clark does not recall ever filing a written complaint regarding the second assault or the names of any prison officials with whom he verbally discussed the second assault. (Clark Depo., p. 67). He did not ask to speak to the Sheriff, nor any of the shift supervisors following the second incident with Harris. (Clark Depo., p. 71). Clark did make a complaint on November 4, 1999, that he was having trouble with his cellmate. (Eiser Affidavit, Exhibit 6). However, Harris was never Clark's cellmate. (Eiser Affidavit). The record is devoid of any indications that Clark was having problems with Harris. Clark alleges that he was struck on the left side of his face by Harris in early November, 1999 (Doc. 1, ¶ 20) and that Harris assaulted him again on December 6, 1999 (Doc. ¶¶ 1, 21), causing him injury.

On their face, these facts are insufficient to satisfy the deliberate indifference standard. When viewed from the perspective of Defendant Leis, or any corrections official employed during the time that Clark was incarcerated, these facts simply do not establish actual knowledge on the part of Defendant Leis, or any prison official, that a substantial and excessive risk of injury to Clark existed. Given these facts, Clark has no evidence to prove that Defendant Leis or any prison official had actually drawn an inference that a substantial risk of harm existed. Therefore, Clark's evidence fails to satisfy the deliberate indifference standard, and Defendant Leis is entitled to summary judgment as a matter of law on all of Clark's claims. See *Scott v. Odmark,* 1997 U.S. App. LEXIS 3400 (6th Cir. 1997) (affirming dismissal of plaintiff's Eighth Amendment claim against prison officials following his assault by his cell mate for failure to satisfy *Farmer's* deliberate indifference standard.)

**B.    Sheriff Leis Is Entitled to Qualified Immunity in His Individual Capacity.**

Qualified immunity serves to shield government employees from liability when performing discretionary functions in the course of their employment. *Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982). Its purpose is to protect such employees from unjustified lawsuits. *Id. at 806.* It is immunity from suit, and not just from damages, and protects "public officials from the broad ranging discovery that can be peculiarly disruptive of effective government." *Wallin v. Norman,* 317 F.3d 558, 563 (6th Cir. 2003); *quoting Anderson v. Creighton,* 483 U.S. 635, 646 (1987).

Qualified immunity may be asserted at various stages of the proceedings, at the pleading stage by way of a motion to dismiss, by way of a motion for summary judgment, or as an affirmative defense at trial. *English v. Dyke,* 23 f.3d 1086, 1089 (6th Cir. 1994). As mentioned previously, in any action brought pursuant to 42 U.S.C. §1983, the plaintiff must prove that (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct "caused"

7

a deprivation of a person's rights or privileges secured by the laws or Constitution of the United States. *Baker v. McCollan*, 443 U.S. 137 (1979); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Nishiyama v. Dickson County Tennessee*, 814 F.2d 227 (6th Cir. 1987)(*en banc*). If a plaintiff is unable to establish both of these elements, the action must be dismissed.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court held that a District court considering a claim of qualified immunity must first determine whether the individual claiming qualified immunity committed a constitutional violation. It is a threshold question, that will immediately resolve the issue if no violation is found to have been committed. *Saucier* states:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. *Siegert v. Gilley, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991).* In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.

*Id.* at 201.

A claimed constitutional violation must be based on more than just the acts of one's subordinates. Supervisory liability cannot be based upon the mere failure to act. *Greene v. Barber,* 310 F. 3d 889 (6th Cir. 2002)(qualified immunity appropriate for police chief who showed up at the scene during an unlawful arrest). It must be based upon active unconstitutional behavior. *Id.*

As Clark has not identified any conduct on behalf of Sheriff Leis, the Complaint can only be described as an attempt to impose strict liability on the Sheriff for the acts of his subordinates. The

Complaint, in fact so states. (Doc.1, ¶6). While it is undisputed that Sheriff Leis is an elected official and employee of Hamilton County, Clark still must demonstrate that Leis both acted under the color of state law and deprived the him of some right or privilege secured by the Constitution and the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). Even assuming that Leis was acting under color of state law during the time frame of his Complaint, Clark fails to set forth anything establishing a claim under 42 U.S.C. §1983 as to Sheriff Leis. Clark has not articulated anything indicating that Leis acted in any capacity other than the employer of the corrections officers and other prison officials who worked during the time period that Clark was incarcerated in the HCJC. Sheriff Leis committed no constitutional violation, and summary judgment in his favor is proper. *Saucier v. Katz*, 533 U.S. 194 (2001); *Greene v. Barber,* 310 F. 3d 889 (6th Cir. 2002)*; see also: Parratt v. Taylor,* 451 U.S. 527, 535 (1981); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997), *cert. denied*, 118 S.Ct 1796 (1998).

**C.     As Sheriff Leis Is the Only Policymaker of Hamilton County Named in the Complaint, and He Committed No Constitutional Violation, Summary Judgment in Favor of Sheriff Leis and Hamilton County is Appropriate.**

In order to maintain an action against Hamilton County for the acts of its employees, it is incumbent that Clark show that the County itself caused a constitutional deprivation. The County cannot be held responsible under a theory of *respondeat superior*. It must be shown that the County, through a custom or policy, caused the alleged constitutional violation. *Monell v. New York Dept. of Social Services,* 436 U.S. 658 (1978). The custom or policy must be the "moving force" behind the violation. *Id. at 694.* "To satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the

execution of that policy.'" *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993), quoting *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987).[1]

In *Monell v. Dept. of Social Services*, the Supreme Court held that municipalities maybe liable under §1983 for injuries caused by official policies or customs. In *Oklahoma v. Tuttle,* 471 U.S. 808 (1985), the Supreme Court held that a single act by a low level official was an insufficient basis to infer the existence of a municipal policy. In so ruling, the Court indicated that *Monell* was intended to prevent the imposition of municipal liability, except in situations where the claimed wrong could be attributed to municipal decision makers. It is clear from *Monell* and *Tuttle*, that the plaintiff must establish that the acts which caused the constitutional deprivation were the policy or custom of decision makers. The acts of employees will not result in liability under the doctrine of *respondeat superior* and a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. *Monell, supra* at 694; *Stemler v. City of Florence,* 126 F 3d 856, 865 (6th Cir 1997), *cert. denied*, 118 S.Ct 1796 (1998).

County liability may be based on actions taken or policies made by an official responsible for making final policy in that area of the county's business, or upon a practice or custom that is so pervasive as to be the functional equivalent of a policy adopted by the final policymaker. *Church v. City of Huntsville*, 30 F. 2d 1332, 1343 (11th Cir. 1994). The plaintiff must "identify the policy, connect the policy to the [County Defendants] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.,* 8 F.3d 358, 364 (6th cir. 1993). Only those municipal officials who have final policy making authority may by their actions

---

[1] See this analysis by Judge Rice in *Rucker v. City of Kettering*, 84 F. Supp. 2d 917, 921 (S.D. Ohio, 2000).

subject the municipality (in this case Hamilton County) to liability. *St. Louis v. Praprotinik,* 485 U.S. 112, 123 (1988), *citing Pembauer v. Cincinnati*, 475 U.S. 469, 483 (1986). Simply going along with discretionary decisions made by one's subordinates is not a delegation to them of the authority to make policy. *Id.* at 130. Further, if the policymaker sued committed no constitutional violation, no liability attaches to the municipality. *Greene v. Barber,* 310 F. 3d 889 (6th Cir. 2002).

Clark alleges that the county had policies and engaged in practices that resulted in overcrowding of the mental health unit and a failure to properly classify and segregate assaultive inmates and specifically a failure to properly house inmate Harris. (Doc.1 ¶¶ 24, 25, 26). these claims all fail. Inmates have no right to a particular security level. *See, Sandin v. Conner* 515 U.S. 472 (1985). Jail officials are not personally liable in damages for overcrowding or the consequences of overcrowding. *Swarts v. Johnson,* 826 F.2d 1065 (6th Cir. 1987). Further, the reliance of jail officials upon the advice from their medical staff does not violate any duty under the Constitution owed by a jailer to an inmate. *Schmidt v. Wingo,* 499 F.2d 70, 73-74 (6th Cir. 1974). Finally, an isolated or occasional attack is not sufficient to state a claim under the Eighth Amendment. *Stewart v. Love,* 696 F2d 43 (6th Cir. 1982) nor are the protections of the Due Process Clause of the Fourteenth Amendment triggered by a lack of due care by prison officials. *Davidson v. Cannon,* 474 U.S. 344 (1986) In *Davidson*, an inmate was threatened by another inmate. He sent a note to the corrections sergeant, who while aware of the contents of the note, did not read it or notify other officers of the threat and forgot about it by the time he went off duty. *Id.* at 345. The events involving Clark are not substantively different. The Supreme Court distinguished this type of incident from those incidents in which guards participate in beating a prisoner, and those in which guards simply stand by and permit an attack to proceed. *Id.* at 348.

The evidence offered by the County Defendants affirmatively demonstrates the absence of liability to this plaintiff for any § 1983 claims. The Sheriff's Office did in fact have a policy, known as Procedure E.20, in place regarding medical and mental health housing assignments of inmates. (Eiser Affidavit, ¶ 3, Exhibit 3). That policy directed that assignments were to be made based upon the medical authority of Corrections Medical Services, Inc., not the discretion of Sheriff Leis or any prison official employed at the HCJC. The plaintiff's 1983 claims are based solely on *respondeat superior*, i.e. because certain unnamed prison officials worked for the Sheriff, the Sheriff's Office is liable. As previously stated, the County Defendants have no *respondeat superior* liability for claims brought pursuant to 42 U.S.C. § 1983. *Monell*, *supra.* at 691. As such, summary judgment should be granted in their favor.

## IV. CONCLUSION

Plaintiff Clark's Section 1983 claims against Sheriff Leis and Hamilton County must fail as a matter of law because Sheriff Leis lacked the culpable state of mind necessary to satisfy the Eighth Amendment deliberate indifference standard. Likewise, Plaintiff has proffered no evidence that any prison official employed at the Hamilton County Justice Center had the "culpable state of mind" necessary to satisfy the deliberate indifference standard. Further, Clark has failed to demonstrate the that Sheriff Leis or Hamilton County, through a custom or policy, caused the alleged constitutional violation of which he complains. Finally, Sheriff Leis enjoys qualified immunity, as outlined above. As such, the County Defendants respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted,

MICHAEL K. ALLEN
PROSECUTING ATTORNEY

HAMILTON COUNTY, OHIO

/s/ David T. Stevenson, 0030014
David T. Stevenson (0030014)
Trial Attorney
Susan Marie Gertz (0065319)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
DDN: (513) 946-3014 (Stevenson)
DDN: (513) 946-3027 (Gertz)
FAX:  (513) 946-3018
ATTORNEYS FOR THE COUNTY
    DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21st, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alphonse A. Gerhardstein, Esq.
Paul M. Laufman, Esq.
1409 Enquirer Building
617 Vine Street
Cincinnati, Ohio 45202

Vincent J. Lodico, Esq.
500 South Front Street, Ste. 1200
Columbus, Ohio 43215

/s/ Susan Marie Gertz, 0065319

Susan Marie Gertz (0065319)
Assistant Prosecuting Attorney
sgertz@prosecutor.hamilton-co.org